## RAILROAD COMPANY *v.* MELLON.

1. The scope of letters-patent must be limited to the invention covered by "the claim," and the latter cannot be enlarged by the language used in other parts of the specification.
2. So limited, the invention for which letters-patent No. 58,447 were granted, Oct. 2, 1866, to Edward Mellon, for an improvement in the mode of attaching tires to the wheels of locomotives, consists simply in rounding off that corner of the inner side of the tire which fits into the re-entrant corner made by the flange upon the rim of the wheel-centre, so as to prevent the corner of the tire from indenting and sinking into the periphery of the wheel-centre.
3. Said letters are, therefore, not infringed by the use of an angular flange upon the wheel-centre, that being expressly excluded by the claim.

APPEAL from the Circuit Court of the United States for the Eastern District of Pennsylvania.

On Oct. 2, 1866, letters-patent No. 58,447 were granted to Edward Mellon for an improvement in the mode of attaching tires to the wheels of locomotives. For the purpose of illustration, three figures, numbered respectively 1, 2, and 3, were appended to the specification on which the application for the letters was based. The specification is as follows:—

" Figures 1 and 2 are central sections of a locomotive wheel having a tire applied to it according to my invention. Figure 3, a section of a portion of a locomotive wheel having its tire affected by wear, drawn with a view of showing the advantage of one feature of my invention. Similar letters of reference indicate like parts.

" This invention has for its object the securing of tires on the wheels of locomotives without the aid of bolts, and in such a manner that the tire, in case of becoming loose, cannot casually slip off from the wheel.

" The invention consists in having the wheel, or the tire which is to be fitted on the same, provided with a single flange, arranged in such a manner that said flange, in connection with the usual flange on the tire, will keep the latter on the wheel. The invention also consists in constructing the tire with a rounded edge at one side of its inner surface in order to prevent said edge from indenting and sinking into the periphery of the wheel, a contingency which would otherwise occur in consequence of the tire becoming stretched by use.

" A represents a locomotive wheel which may be constructed in the usual or any proper manner, and B is the tire fitted thereon. The periphery of the wheel A is provided at the inner edge with a flange $a$, as shown in Figures 1 and 2.

" The tire B is shrunk on the periphery of the wheel A, as usual, and it will be seen that the flange $a$ prevents the tire, should it become loose on the wheel A, from slipping off at the inner side of the wheel, and the flange $b$ of the tire will of course prevent the latter from slipping off at the outer side of the wheel.

" By this arrangement no bolts or set screws are required to aid in fastening the tire on the wheel, for it is impossible for the tire to leave the wheel either at the right or left side thereof.

" The same result may be attained by having the surface of the tire at its outer edge provided with a flange, $a'$, as shown at the upper part of Figure 2.

" The inner surface of the tire at its inner edge is rounded, as shown at $c$, in all the figures, in order to prevent said edge from indenting or sinking into the periphery of the wheel. The tires of locomotive wheels are, under the jars, concussions, and wear to which they are subjected, considerably stretched, and they invariably become concave at their inner surface (see Figure 3), the edges spreading over the sides of the wheel, and forming in a lock, in some cases, so as to render the cutting of the tire necessary, in order to detach it from the wheel. With my improvement the

flange *a* would cause the inner edge of the inner surface of the tire to indent the periphery of the wheel, or form a crease in it if the edge *c* were not rounded.

" The great feature in this invention is that I retain the tire on the wheel without the employment of bolts, rivets, keys, or other like attachments. I heat my tire until it has expanded sufficiently to be slipped over the periphery of the wheel; it then cools and contracts, and holds or binds the wheel firmly.

" After the wheel, as completed, has been in use a certain length of time, the tire will stretch and thus become loose on the wheel ; then the pressure of the resistance against the rail will bear or force the tire inward against the flange *a* of the wheel.

" Now, it is not intended to run the engine unnecessarily with a loose tire, but should this tire become loose while on the road, there is sufficient safety in running the engine until the depot is reached, or until it will be convenient to repair or replace it by a new one.

" The tire can be readily slipped off, there being no rivets or other fastenings to undo, and the convenience and utility of my improvement is apparent.

" I am aware of the invention described in patent to N. Hodge, Nov. 18, 1851, but I wish it to be understood that I do not claim the invention therein described, viz. the angular flange upon the inner edge of the wheel and the flange upon the outer edge of the wheel, but I do claim as my invention the wheel with the curved flange upon the inner edge in combination with a tire with a rounded corner to fit said curved flange, as set forth."

The application for letters-patent, as is shown by the file-wrapper, was made Oct. 6, 1865. It was twice rejected; the last time on April 23, 1866.

The bill in this case charged that the letters-patent had been infringed by the Lehigh Valley Railroad Company, the defendant, and it prayed for an injunction and an account of profits.

The answer of the company denied that Mellon was the first inventor of the mode of attaching tires to wheels of locomotives, described in his letters-patent, and it also set up former letters-patent and publications, bearing date many years before his alleged invention, and showing, as was claimed, tires and wheels such as the company use.

Among them are letters-patent No. 8526, granted to Nehemiah Hodge, Nov. 18, 1851, for a new and useful improvement in railroad car wheels. One of the drawings (that designated as Figure 2) annexed to his specification on which the letters-patent were granted shows a flange or shoulder from the rim of the wheel-centre projecting over and overlapping the tire.

The answer, by way of further defence, denied infringement.

The Circuit Court upon final hearing found against the company upon both issues made by the answer, perpetually enjoined it from further infringement, and directed an account of profits to be taken. Upon the coming in of the master's report a decree was rendered in favor of Mellon for the sum of $3,018.

This appeal was thereupon taken by the company.

Figures 1, 2, and 3 appended to Mellon's specification are as follows : —

The following represents Figure 2 of the drawings annexed to the specification of Hodge.

*Mr. Alexander D. Campbell* and *Mr. Edward N. Dickerson* for the appellant.

*Mr. Furman Sheppard, contra.*

MR. JUSTICE WOODS, after making the foregoing statement of facts, delivered the opinion of the court.

It appears from the evidence that railroad locomotive wheels are composed of two parts, — the body of the wheel, called the wheel-centre, and a tire which surrounds it, substantially in the same manner in which the tire surrounds the felloes of an ordinary wagon wheel.

The invention of Mellon relates solely to a method of fastening tires upon locomotive wheel-centres. It appears from the record that, generally speaking, there are two ways of fastening these tires upon their wheel-centres ; one by making the tire a little smaller in diameter than the wheel-centre, then heating it so that it will expand somewhat more than the difference between its diameter and the diameter of the wheel-centre, and in that condition slipping it on the centre and allowing it to cool, thus following the method of a blacksmith in shrinking a wagon tire upon a wooden wheel. Another method is to fasten the tire cold upon the wheel-centre by means of screws or bolts.

The former method is now almost universally used. In shrinking the tires on the wheels, the practice usually followed at present is to turn the wheel-centre, bore the tire in a cylindrical form, and rely solely upon the contraction of the tire by cooling to retain it upon the wheel.

A modification of this method is, in place of the wheel-centre and tire meeting each other in a cylindrical joint, to have some kind of a flange, lip, or shoulder to project either from the circumference of the wheel-centre or from

the bore of the tire, to fill a corresponding groove or recess in the opposite part, so that when the tire has been shrunk on the wheel-centre it cannot be driven sideways off the wheel against the resistance of this flange. The wheels exhibited in the drawings of Mellon's patent belong to this latter class.

The right of Mellon to the relief prayed for in the bill depends in part upon the construction to be placed on his letters-patent.

His counsel contends that they cover two things, which, it is claimed, are in substance set forth in his specification as follows : —

*First*, In having the wheel, or the tire which is to be fitted on the same, provided with a single flange arranged in such a manner that said flange, in connection with the ordinary flange on the tire, will keep the latter on the wheel.

*Second*, In constructing the tire with a rounded edge at one side of its inner surface, in order to prevent said edge from indenting and sinking into the periphery of the wheel, a contingency which would otherwise occur in consequence of the tire being stretched by use.

Conceding that the patent is to be construed according to the contention of the appellee, we are of opinion that he has not shown himself entitled to relief.

An inspection of the specification and drawings which accompany the letters-patent granted to Nehemiah Hodge under date of Nov. 18, 1851, shows precisely the contrivance first described in the specification of the appellee's patent. The drawing, representing a central cross-section of a car-wheel, appended to Hodge's specification, accurately illustrates the first alleged invention described in the specification of appellee's patent. His patent cannot, therefore, be held to include that contrivance. So far as that part of his alleged invention is concerned, the defence of want of novelty is conclusively established.

But there is another answer to this part of his case.

The act of July 4, 1836, c. 357 (5 Stat. 117), under which this patent was issued, requires that an applicant for a patent shall not only " deliver a written description of his invention

or discovery," but " shall also particularly specify and point out the part, improvement, or combination which he claims as his own invention or discovery." This provision is substantially re-enacted in the act of July 8, 1870, c. 230 (16 Stat. 198), Rev. Stat., sect. 4888, and remains in force.

As a rule, therefore, the specification filed with the application for letters-patent contains a general description of the invention sought to be patented, which is followed by what is technically called the " claim." In reference to this latter part of the specification this court, speaking by Mr. Justice Bradley, has said : " It is well known that the terms of the claim in letters-patent are carefully scrutinized in the Patent Office. Over this part of the specification the chief contest generally arises. It defines what the office, after a full examination of previous intentions and the state of the art, determines the applicant is entitled to." *Burns* v. *Meyer*, 100 U. S. 671. See also *Keystone Bridge Co.* v. *Phœnix Iron Co.*, 95 id. 274, 278.

In view, therefore, of the statute, the practice of the Patent Office, and the decisions of this court, we think that the scope of letters-patent should be limited to the invention covered by the claim, and that though the claim may be illustrated, it cannot be enlarged by the language used in other parts of the specification.

We are, therefore, justified in looking at the " claim " with which the specification of the appellee's invention concludes, to determine what is covered by his letters-patent.

The claim, so far from covering an angular flange upon the wheel, expressly excludes such a flange, and embraces only a flange with a curved or rounded corner.

In this case the description of the appellee's invention is much broader than his claim. It seems quite clear from the present form of his specification, and from the fact that his application for a patent was twice rejected, that he was compelled by the Patent Office to narrow his claim to its present limits before the commissioner would grant him a patent. In doing this he neglected to amend the descriptive part of his specification. He cannot go beyond what he has claimed and insist that his patent covers something not claimed, merely

because it is to be found in the descriptive part of the specification.

The appellee is, therefore, precluded from claiming relief against the appellant for the use of a flange with a square corner. He is, consequently, driven to the second branch of his alleged invention, as set out in his bill of complaint, as the basis of any relief against appellant.

This, as is clear from his claim, consists simply in rounding off that corner of the inner side of the tire which fits into the re-entrant corner made by the flange upon the rim of the wheel-centre, so as to prevent the corner of the tire from indenting and sinking into the periphery of the wheel-centre.

The charge in the bill of infringement of this part of appellee's alleged invention is not sustained by the proof. The answer, which is under oath, denies infringement. Infringement must, therefore, be shown by satisfactory proof; it cannot be presumed. The evidence for the appellee entirely fails to establish this part of his case. On the contrary, the proof adduced by the appellant is not only persuasive, but conclusive to show that it never made or used the flange with the rounded corner.

We are of opinion, therefore, that the record discloses no case against the appellant. The decree of the Circuit Court must, therefore, be reversed, and the cause remanded with instructions to dismiss the bill; and it is

*So ordered.*